UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                                  Case No. 18-20662

Jermaine Turner,                                                    Sean F. Cox
                                                                 United States District Court Judge

    Defendant.
_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND MOTION FOR DISCLOSURE

Defendant Jermaine Turner ("Turner") was charged with several drug and firearms offenses following his arrest outside a grocery store, and the execution of a search warrant at a home on Engleside Street in Detroit Michigan, on September 12, 2018. The matter is currently before the Court on two motions filed by Turner: 1) a motion seeking to suppress evidence seized during the execution of the search warrant; and 2) a motion asking the Court to disclose the identity of the confidential informant referenced in the search warrant affidavit. The motions have been fully briefed by the parties and the Court heard oral argument on them on March 20, 2019.

As explained below, the Court concludes that Turner has not met his burden of establishing that he is entitled to *Franks*[1] hearing in connection with his challenge to the search warrant. The Court also concludes that, looking at the four concerns of the search warrant

---

[1]*Franks v. Delaware*, 438 U.S. 154 (1978).

1

affidavit, it was sufficient to establish probable cause justifying issuance of the search warrant. Moreover, even if that were not the case, suppression would not be appropriate because the *Leon* good-faith exception would apply here. As such, the Court shall deny Turner's Motion to Suppress.

The Court shall also deny Turner's "Motion For Disclosure Of Informant's Identity And Details Of Agreements." Turner has not met his burden for having the confidential informant's identity disclosed here, where the only evidence is that the informant was a mere tipster who did not participate in the alleged criminal activity with which Turner is charged.

## BACKGROUND

On September 12, 2018, Officer Steven Riley with the Detroit Police Department applied for a search warrant for a home located on Engleside Street in Detroit, Michigan. The Search Warrant and Affidavit are attached to the Government's Response Brief as Exhibit A. The warrant sought to search the following described place: "the entire premises and curtilage of [****]8 Engleside Detroit, Mi 43205. This location is described as a 1 ½ story single family unit having its address clearly marked on the front door of the location. The dwelling is brown brick with white trim, located on the south side of the street between Dresden and Bradford, located in the City of Detroit, County of Wayne, and State of Michigan. (Hereafter referred to as the target)." (*Id.*).

It also included the following: "Also to be searched is the B/M, 30-35s, 5'10", 190-200 lbs, Med Complexion (hereafter referred to as the seller). Note: Sellers often change; a different seller might be present during the time of execution." (*Id.*).

The Search Warrant Affidavit then stated various facts regarding the investigation and

2

the officer's experience, that were sworn to by Officer Riley. Those included:

> The affiant is a sworn member of the Detroit Police Department, currently for twenty (20) years. Affiant is assigned to the Gang Intel Unit and is currently conducting an investigation into the sales of illicit drugs at the above location. The affiant was assigned to the Narcotics Enforcement Section for almost (5) five years. While assigned to that unit affiant was tasked with conducting narcotic raids, street level narcotics enforcement and vice operations. Affiant has also been involved throughout his career with making undercover narcotics purchases, and posing as a narcotics dealer in reverse operations.
>
> On 09-10-18 the affiant received confidential information from a credible and reliable unregistered confidential informant, regarding illegal narcotics, which are being stored and sold from [****]8 Engleside, in the City of Detroit, County of Wayne, and State of Michigan. The confidential informant stated that narcotics are being stored and also sold by the seller at [****]8 Engleside. This confidential informant has been used by this affiant on numerous past occasions. Furthermore, this confidential informant had provided credible and reliable information in the past that has yielded significant quantities of marijuana, heroin and cocaine.
>
> The confidential informant stated that he/she was inside of [****]8 Engleside within the past 24 hours and observed large amounts of cocaine and heroin being sold and stored at [****]8 Engleside. The confidential informant stated that he/she observed transactions to occur at the front door of the location by the described seller. The confidential informant stated to affiant that the seller is highly cautious of police activity and if any persons are stopped coming or going from the location evidence will be moved or destroyed.
>
> On 09-10-18 the affiant conducted a surveillance operation at the above target. During the course of the surveillance (approximately 1 hour) affiant observed the following transactions:
>
> Transaction #1: A b/m arrived at the location on foot. The b/m was greeted by the seller at the front door. The b/m was allowed entry to the location by the described seller. The b/m buyer emerged from the location after approximately three minutes and left the location.
>
> Transaction #2: A b/m arrived at the location driving a red Dodge 2door. The b/m exited the vehicle and was greeted by the seller at the front door. The b/m was allowed entry to the location by the described seller. The b/m buyer emerged from the location after approximately one minute and left the location.
>
> Transaction #3: A b/m arrived at the location on foot. The b/m was greeted by the

seller at the front door of target location. Affiant then observed the buyer and seller make a hand to hand transaction where buyer received a small palm sized item then left the location.

On 09-11-18 the affiant conducted a surveillance operation at the above target. During the course of the surveillance (approximately 30min) affiant observed the following transactions.

Transaction #1: A b/m arrived at the location driving a white pickup truck. The b/m was greeted by the seller at the front door of the target location. The b/m was allowed entry to the location by the described seller. The b/m buyer emerged from the location after approximately one minute and left the location.

Transaction #2: A b/m arrived at the location driving a blue van. The b/m exited the vehicle and was greeted by the seller at the front door. The b/m was allowed entry to the location by the described seller. The b/m buyer emerged from the location less than one minute and left the location.

The affiant has been conducting narcotics investigations for several years. The type of described activity is very consistent with that of someone who is engaged in illegal narcotic trafficking. It is not uncommon for illegal narcotic traffickers to conduct business at one location and reside at another.

The affiant has participated in over 150 investigations, in the overwhelming majority of these investigations illegal firearms were found, used to protect the seller's [sic] while conducting illegal narcotic sales and Affiant seeks to remove these weapons.

(*Id.*).

The requested search warrant for ****8 Engleside in Detroit, Michigan ("the Engleside House") was issued on September 12, 2018.

On September 12, 2018, prior to the execution of the search warrant, the officers received information from a confidential informant that an individual associated with the Engleside House was going to be selling narcotics at the Glory supermarket in Detroit, Michigan. (*See* Def.'s Br. at 5; Ex. B to Govt.'s Br., Investigation Report). The officers went to that location, where they observed Turner holding a knotted bag of what appeared be cocaine and making what appeared

4

to be a hand-to-hand narcotics transaction with a woman. The officers arrested Turner at that location and recovered cocaine (a baggie containing seven paper folds of cocaine and several other baggies containing chunks of cocaine) and $1,656.00 in cash from Turner's person. (*Id.*).

The officers then went to the Engleside House and executed the search warrant. The officers secured the residence and found the following evidence, that was seized: 1) cocaine; 2) heroin; 3) a digital scale and numerous empty sandwich baggies; 4) a loaded AMT semi-automatic handgun; 5) a loaded rifle; 6) a loaded Glock 27, fully automatic handgun; 7) an extended drum magazine loaded with numerous rounds of ammunition; and 8) a duffle bag containing numerous rounds of ammunition. (Investigation Report).

In a post-*Miranda* interview done that same day, Turner admitted to living at the Engleside House for two years, possessing and selling cocaine and heroin at the Glory supermarket and at the house, and possessing the firearms and ammunition recovered from the search of the house. (Govt.'s Ex. C, Statement).

The Interrogation Record filled out by Officer Riley states that Turner is a 38 year old black male with a medium complexion, and that he is 5'9" and weighs 190 pounds. It did not note any "eye defects." (Ex. D to Govt.'t Br.)

Turner has now filed the instant motions, seeking to suppress the evidence seized during the execution of the search warrant at the Engleside house and asking this Court to disclose the confidential informant's identity.

## ANALYSIS

I.   **Turner's "Motion To Suppress Evidence Obtained By The Search Warrant, Or In The Alternative, Request For An Evidentiary Hearing Pursuant To *Franks v. Delaware,*" Shall Be Denied.**

Turner's Motion to Suppress challenges the search warrant on several grounds. First, Turner seeks a *Franks* hearing and suppression under that doctrine, based upon alleged material misrepresentations of fact and/or omissions in Officer Riley's search warrant affidavit. Second, Turner asserts the search warrant affidavit did not establish probable cause and that the evidence seized during the execution of the warrant should be suppressed.

   A.   **Turner Has Not Made The Requisite Showing For A *Franks* Hearing, Based On Either Misrepresentations Or Omissions.**

As explained by the Sixth Circuit in *United States v. Mastromatteo*, 538 F.3d 535 (6th Cir. 2008):

> To obtain a *Franks* hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must also show that the allegedly false statements were necessary for the magistrate's determination of probable cause. Therefore, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674 (footnote omitted). What remains of the affidavit establishes probable cause if it "provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at" the stated location. *Graham*, 275 F.3d at 504.

*Id.* at 545. Thus, "[t]o deserve a *Franks* hearing to challenge the validity of a search warrant, a defendant must make a substantial preliminary showing of two elements: first, a defendant must show that the affiant included – either knowingly and intentionally or with reckless disregard for

6

the truth – a false statement in the affidavit." *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013). Second, the defendant must establish that the allegedly false statements were necessary to the magistrate's finding of probable cause. Only if both showings are made is an evidentiary hearing warranted. *Id.*

Moreover, with respect to the movant's first hurdle, the United States Supreme Court, in *Franks*, instructed that:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and *those allegations must be accompanied by an offer of proof.* They should *point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.* Allegations of negligence or innocent mistake are insufficient.

*Franks,* 438 U.S. at 171 (emphasis added).

Here, Turner asserts that Officer Riley "falsely, or in reckless disregard for the truth," averred that the confidential informant referred to in the search warrant affidavit had been a credible and reliable source of information for him. (*See* Turner's Br. at 4 and 12). Turner suggests that statement was not true – but offers no proof to support that. Rather, Turner simply notes that the confidential informant was not a *registered* confidential informant, and then speculates that Riley could have made unsubstantiated claims. (*Id*. at 14) ("An experienced police officer, such as Riley, knows that an 'Unregistered Informant" has no documented history to support or refute claims of credibility and reliability. That leaves an affiant, such as Riley, in a position to make unsubstantiated claims because nothing is being recorded or documented.").

7

Such mere speculation is not sufficient to warrant a *Franks* hearing.

To the extent that Turner seeks to obtain a *Franks* hearing based on alleged omissions, his motion does not fare any better. (*See* Turner's Br. at 8, asserting that the search warrant "omitted material facts that vitiate probable cause.").

"Although material omissions are not immune from inquiry under *Franks*," the Sixth Circuit has "recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkins*, 107 F.3d 1213, 1217 (6th Cir. 1997).

The Sixth Circuit has "repeatedly held that there is a *higher bar* for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (emphasis added). Allegations of material omission are held to a higher standard because of the "potential for endless rounds of *Franks* hearings" due to potentially "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id*. (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)).

"If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Atkins*, 107 F.3d at 1217 (citing *United States v. Bonds*, 12 F.3d 540, 568 n. 26 (6th Cir.1993)).

In determining whether to issue a search warrant on the basis of a particular affidavit, a magistrate reviews the affidavit according to the totality of the circumstances and "make[s] a

8

practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information, there is probable cause." *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007). The affidavit underlying a search warrant is sufficient to support a finding of probable cause if, based on the totality of the circumstances, it provided the magistrate with a substantial basis for concluding that there was probable cause to issue the warrant. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Thus, the Court must determine if Turner has made a preliminary showing that Officer Riley engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit. Even if Turner can make such a showing, the Court must then consider the affidavit including the omitted facts and determine if probable cause still exists.

In his brief, Turner asserts that the search warrant affidavit in this case "omitted material facts that vitiate probable cause." (Turner's Br. at 8). Turner does not, however, identify for the Court any omitted facts that were known by Officer Riley at the time he applied for the search warrant yet were not included in the search warrant affidavit.

On page 19 of his brief, Turner alludes to his having "a very obvious physical impairment" and appears to suggest that facts regarding that alleged impairment were known by Officer Riley yet not included in the search warrant affidavit. But again, Turner offers no proof to show that he has an obvious physical impairment, or that Officer Riley knew of it prior to obtaining the search warrant. Indeed, Turner's brief does not even tell the Court what the obvious physical impairment is that he allegedly has.

The Government's response brief states that, based on a prior conversation with counsel,

9

Turner's brief may be referring to Turner having either strabismus (crossing eyes) or amblyopia (a lazy eye). Both of those conditions can be intermittent and, as the Government notes, such conditions may be difficult for an officer to observe, especially from a distance.

Rather than identify any facts that were known by Officer Riley, but not included in the affidavit, that would detract from the probable cause analysis, Turner simply criticizes the investigation done by Officer Riley prior to obtaining the search warrant.

First, Turner claims that if Officer Riley observed the seller during the observed transactions detailed in the affidavit, then he should have "add[ed] to the description of the seller in the search warrant," but does not specify what descriptive details should have been added or explain how such details would detract from the probable cause analysis.

Second, Turner faults the affidavit for not indicating whether or not a currency exchange was observed by Office Riley regarding the transaction that involved the exchange of a palm-sized item. There would still be probable cause based on the information that was contained in the search warrant affidavit, even if the affidavit had stated that no currency exchange was observed by Officer Riley.

Third, Turner criticizes the officer for not having collected and included the license plate numbers of the vehicles involved in the transactions observed at the house. The Court fails to see how including the license plate numbers of vehicles visiting the target house for the suspected drug transactions would vitiate probable cause.

Fourth, Turner contends the officers should have stopped vehicles as they left the target house after suspected drug transactions. Again, this is not omitted factual information known to the officer but not included in the affidavit. It is simply criticizing the investigation, suggesting

that they could have done additional things, like stopping vehicles visiting the house or conducting a controlled buy.

In another portion of his brief, Turner also faults the search warrant affidavit for not including details such as whether the heroin was "Asian white or Mexican brown," how it was packaged, or where it was stored in the house. (Def.'s Br. at 10-11). Turner makes no offer of proof that Officer Riley knew of such details but failed to include them. Moreover, even if such details had been included in the search warrant affidavit, they would not detract from a finding of probable cause.

Accordingly, the Court concludes that Turner has not met his burden of showing that he is entitled to a *Franks* hearing based upon either misrepresentations or omissions.

### B. Based On The Four Corners Of The Search Warrant Affidavit, It Was Sufficient To Establish Probable Cause

For a search warrant to be valid, it must be supported by probable cause. U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Abernathy*, 843 F.3d at 240.

Given that Turner has failed to establish that he is entitled to a *Franks* hearing, the Court looks to the four corners of the search warrant affidavit to determine whether it establishes probable cause. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *United States v. Abernathy,* 843 F.3d 243, 249 (6th Cir. 2016).

In order to establish probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that indicates a "fair probability" that evidence of a crime will be

11

located on the premises of the proposed search. *United States. v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009). In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

Here, Turner makes various arguments in support of his claim that Officer's Riley affidavit in support of the application for a search warrant did not establish probable cause. But the Court concludes they all lack merit.

As the Government notes, Turner repeatedly invites the Court to speculate on additional information that the affidavit could have included. For example, Turner asserts that probable cause is somehow lacking based upon information that was not included in the affidavit, such as whether the heroin was "Asian white or Mexican brown" and the lack of the seller's name or nick name in the affidavit. (Def.'s Br. at 10-11)

The appropriate analysis, however, is the adequacy of what the affidavit *does contain*, "not on what it lacks, or on what a critic might say should have been added." *Dyer*, 580 F.3d at 391 (quoting *United States v. Allen*, 211 F.3d 970, 971 (6th Cir. 2000) (en banc)).

The Government persuasively argues that the information provided in Officer Riley's affidavit establishes probable cause to believe that narcotics would be found inside the Engleside House:

> In this case, Officer Riley presented several critical facts to the reviewing magistrate that gave rise to probable cause. First, the CI in this case told Officer Riley that he or she had been inside \*\*\*\*8 Engleside within the previous 24 hours and observed cocaine and heroin being sold and stored there as well as drug transactions occurring at the front door of the location by the described seller. Exh. A. Courts in this district have held that such information can, when corroborated, give rise to probable cause. *See United States v. Mills*, No. 16-CR-20460, 2019 WL 211140, at \*6 (E.D. Mich. Jan. 16, 2019) (Goldsmith, J.).

(Govt.'s Br. at 8).

Officer Riley's affidavit states that this particular confidential informant "has been used by [him] on numerous past occasions," and this confidential informant "has provided credible and reliable information in the past that has yielded significant quantities of marijuana, heroin and cocaine." (ECF No. 31-2). Officer Riley's statements regarding the credibility and reliability of his confidential informant are sufficient to establish that he or she was reliable under Sixth Circuit case law. *See, e.g.*, *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) (Rejecting the defendant's argument that there was insufficient information of reliability because the affidavit failed "to indicate the specific interaction the [CI] had with law enforcement officials" as "Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable."); *United States v. Moore*, 661 F.3d 309, 313 (6th Cir. 2011); *United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004); *United States v. Martin,* 526 F.3d 926, 937 (6th Cir. 2008).

Moreover, after receiving the information from the confidential informant, Officer Riley independently corroborated the information by conducting surveillance of the house on Engleside. As detailed in his affidavit, on September 10, 2018, the same day he received the information from the confidential informant, Officer Riley observed the described seller engage in what appeared to be three suspected drug transactions within a time period of approximately one hour. Additionally, the next day, he conducted additional surveillance and observed what appeared to be two additional drug transactions during a time period of approximately a half hour. Those observations support the information provided to Officer Riley by the confidential

13

informant.

Turner's counsel repeatedly emphasizes that the confidential informant that provided the information to Officer Riley is not a registered confidential informant with the City of Detroit. Turner has not, however, provided any authority to support his position that the confidential informant should be deemed unreliable simply because he is not registered with the City of Detroit. And as the Government persuasively argues, some confidential informants are registered by police departments, others are not. "Registrations does not make a CI reliable, and the lack of registration does not make a CI unreliable." ("Govt.'s Br. at 9).

      C.      **Moreover, Even If The Warrant Was Invalid, The *Leon*-Good Faith Exception To Exclusion Would Apply Here.**

In *Leon*, the Supreme Court held that evidence will not be excluded if it was obtained by police officers acting in reasonable reliance on a search warrant that is subsequently invalidated. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). To aid courts in addressing this issue, *Leon* outlined four circumstances in which an officer's reliance *would not* be objectively reasonable. *Leon*, 468 U.S. at 914-15.

Here, the Government argues that even if the warrant was not valid, the search would still be valid under the good faith exception to the warrant requirement as established by *Leon*.

The Court agrees with the Government, because none of the four circumstances described in *Leon* exist here.

First, Officer Riley's affidavit did not contain any information that he knew or was reckless in not knowing was false.

Second, the affidavit contained enough information such that the magistrate could make a determination to issue it without becoming "a rubber stamp" for police activities. *Leon,* 468

U.S. at 914.

Third, the affidavit was not so conclusory as to constitute a "bare bones" affidavit. Like the situation presented in *Moore*, the "affidavit contained information about the reliability of the CI and basis of his/her information. This is not a situation in which the warrant 'states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Moore*, 661 F.3d at 315 (citations omitted.).

Fourth, the warrant is not so facially deficient that it cannot be presumed to be valid.

Accordingly, this Court concludes that even if the warrant in this case did not meet the threshold of probable cause, it would still satisfy the "less demanding showing" required under the *Leon* good-faith exception. *Id.*

## II. Turner's Motion for Disclosure Of Informant's Identity And Details Of Agreements Shall Be Denied Because Turner Has Not Met His Burden For Disclosure.

In this motion, Turner asserts that the Government should be ordered to disclose to defense counsel the identity of the confidential informant referenced in Officer Riley's search warrant affidavit.[2] (Def.'s Br. at 5).

The government has the privilege "to withhold from disclosure the identity of persons who furnish information of violations of the law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege

---

[2]Turner's Counsel also asks the Court to order the Government to produce any agreements between that informant and law enforcement officers involved in this case. He does not provide any argument or authority specific to that request.

recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id*.

Where the disclosure of an informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of cause," however, "the privilege must give way." *Id.* at 60-61. In *Roviaro,* the Supreme Court expressed that "no fixed rule with respect to disclosure is justifiable." *Id.* at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

The Sixth Circuit has explained that "[a]lthough there is no fixed rule," in practice, "disclosure has usually been required" when "the informer was an active participant in the events underlying the defendant's potential criminal liability." *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985) (collecting cases). On the other hand, "disclosure has usually been denied when the informant was not a participant, but was a mere tipster or introducer. *Id.*; *see also United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007) ("We usually deny disclosure when the informer was not a participant" but rather, was a mere tipster or introducer.); *United States v. Jackson*, 990 F.2d 251, 254 (6th Cir. 1993) (Finding district court had a valid basis for denying disclosure where the informant was not a participant in the offense with which the defendant was charged, and was not present when the defendant was arrested.)

The burden is on Defendant Turner "to show how disclosure of the informant would substantively assist his defense." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).

16

Before a district court orders disclosure of a confidential informant, the district court first make a preliminary *in camera* interview of the informant. *Sharp,* 778 F.2d at 1187. But the Sixth Circuit has "emphasize[d] that it is ordinarily not even appropriate for the trial court to compel the production of the suspected informant for an *in camera* interview unless the defendant has first borne his burden of producing some evidence supportive of" his asserted defense, "and not merely unsworn assertions of his counsel." *Id.*

"Where the defendant's claims are based on 'mere conjecture or supposition about the possible relevancy of the informant's testimony,' such claims are insufficient to warrant disclosure." *United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007) (citing *Sharp, supra*).

That is all Turner has offered here.

First, Turner's counsel asserts that "[b]ased on averments in the affidavit supporting the search warrant, it is likely the informant not only witnessed drug sales, he/she participated in the criminal activity that allowed the affiant to obtain a search warrant." (Def.'s Br. at 8). This is pure conjecture. There is nothing in the search warrant affidavit to indicate that the confidential informant participated in any of the criminal activity with which Turner is charged (possession of drugs with intent to distribute, illegal possession of firearms, and using and maintaining a drug premises).

Alternatively, based on the lack of certain details in the search warrant affidavit, such as the street name for the type of heroin being sold, Turner questions "whether this informant even exists." (Def.'s Br. at 9). There is no evidence to support this speculation. Officer Riley submitted a sworn affidavit stating that he received information from a confidential informant. If a defendant could obtain disclosure of a confidential informant by simply asserting, with no

17

evidentiary basis for doing so, that no confidential informant may actually exist, then all confidential informants would have to be disclosed upon request.

Turner asserts that the "existence of this informant and accuracy of his information are critical to 'Defendant's Motion to Suppress Evidence obtained as the result of the Search Warrant,' as well as any defense at trial." (Def.'s Br. at 11). Defense Counsel asserts that the "defense has a right to know if the informant actually exists and whether the informant has valuable exculpatory information that may assist the defense at trial." (*Id*. at 12). Defense Counsel does not explain what "exculpatory information" the informant could possibly have. Defense Counsel also fails to explain how the identity of the informant would aid Turner's defense. Indeed, Defense Counsel does not discuss *any possible defenses* to the charges that Turner may present at trial.

The Government asserts that the Court should deny Turner's request for disclosure because the CI here was not a participant in the criminal activity and was a mere tipster whose statements formed a partial basis for the search warrant.

As the Government notes, the charges against Turner all "stem from the execution of the search warrant at his residence and the search of his person outside the Glory supermarket. No information has been presented that would even suggest that the CI was a participant or otherwise involved in Turner's charged crimes. Indeed, the CI was not present at either one of these events, and would have no relevant information to which to testify." (Govt.'s Br. at 8).

The Court concludes that Turner has not met his burden for obtaining disclosure of the confidential informant in this case and shall deny the motion.

**CONCLUSION & ORDER**

For the reasons set forth above, IT IS ORDERED that Defendant Turner's Motion to Suppress and Motion for Disclosure are DENIED.

IT IS SO ORDERED.

s/Sean F. Cox<br>Sean F. Cox<br>United States District Judge

Dated: March 21, 2019